__x__ FILED   ___ ENTERED
____ LOGGED  ____ RECEIVED

9:33 am, Sep 28 2020

AT  BALTIMORE
CLERK, U.S. DISTRICRT COURT
DISTRICT OF MARYLAND
BY crp                 Deputy

AUSA Lauren Perry

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. 1:20-mj-2424 TMD |
| | * | |
| MAURICE ANTONIO BULL, | * | |
| | * | |
| Defendant. | * | |
| | * | |

********

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT

Your Affiant, Michael DeBord, Task Force Officer of the Federal Bureau of Investigation ("FBI"), being duly sworn, deposes and states as follows:

1. Your affiant is engaged in the investigation of Correctional Officer, **MAURICE ANTONIO BULL,** a Correctional Officer at the Eastern Correctional Institution located at 30420 Revells Neck Road, Westover, Maryland 21890. As set forth below, I believe that there is probable cause to believe that **MAURICE ANTONIO BULL** has committed the following offenses: interstate travel with the intent to promote, manage, establish, carry on, or facilitate the promotion, management or carrying on of Maryland bribery laws, in violation of 18 U.S.C. § 1952(a)(3), and possession with intent to distribute controlled substances, in violation of 12 U.S.C. § 841(a).

## IDENTITY AND EXPERTISE OF AFFIANT

2. Your affiant, Detective Sergeant Michael DeBord, is a duly sworn member of the Department of Public Safety and Correctional Services ("DPSCS"), Internal Investigative

- 1 -

Division, and has been serving in this capacity since June 2016. Currently assigned as a Task Force Officer ("TFO") for the Federal Bureau of Investigation, Public Corruption/Civil Rights, Squad C-10. Prior to my employment with DPSCS, I was a duly sworn officer with the Baltimore City Police Department, from 1987 to 2012, and the Baltimore County Police Department, from 2012 to 2016. I have investigated various crimes, including homicides, non-fatal shootings, rape, robbery, assaults, and theft. From June 2006 until October 2012, I was assigned to the FBI's Violent Crimes Task Force, where I investigated and assisted the FBI in the investigation of bank robberies, armored car robberies, kidnappings, extortion, and threats on public officials.

3. In my current role as a TFO, I investigate prison corruption. Through that experience, I have become familiar with the general methods and techniques associated with the distribution of narcotics, the laundering of drug proceeds, and the organization of drug conspiracies and specifically with those methods and techniques as they related to prison smuggling operations and prison corruption. I have personally participated in investigating several prison corruption cases and am a member of the Maryland Prison Corruption Task Force that was established to combat corruption in Maryland prisons. During my law enforcement career, I have authored numerous search and seizure warrants and arrest warrants for the various criminal offenses, and have recovered evidence relating to those crimes.

## STATEMENT OF PROBABLE CAUSE

4. On September 7, 2020, TFO Kevin Carvell and I were contacted by the Intelligence Unit at the Eastern Correctional Institution ("ECI"), a medium security Maryland state prison located in Westover, Maryland, regarding staff corruption at the facility.

5. Specifically, the Intelligence Unit reviewed several recorded telephone calls made from the facility by inmate Joshua Berger, state identification (SID) number 2986680, to his sister

Jennifer Berger, 443-409-XXXX, on the Global Tel Link (GTL) Inmate phone system. These calls revealed a possible meeting between ECI Correctional Officer ("CO") MAURICE BULL, and Jennifer Berger was to take place on Wednesday, September 9, 2020. The phone calls indicated that Jennifer Berger would be driven to the Eastern Shore area by another female identified as Alisha Riley of Dundalk, Maryland. Again, according to the recorded calls, CO BULL was expected to receive a bribe payment for smuggling drugs and other contraband into ECI at that meeting.

6. On September 9, 2020, TFO Kevin Carvell, FBI Special Agent Joseph Lear, members of the Maryland State Police ("MSP") Gang Enforcement Unit, and I conducted physical surveillance at Alisha Riley's known residence. ECI's Intelligence Unit provided updated information that, based on their continued review of recorded calls, Alisha Riley was no longer expected to transport Jennifer Berger to the Eastern Shore. Instead, a female identified as "Ashley" would be driving and the two may be leaving for the Eastern Shore at 10:00 a.m. Surveillance was moved to Jennifer Berger's known residence in Dundalk, Maryland.

7. At approximately 9:58 a.m., members of the surveillance team observed a dark blue Saturn Relay bearing MD tag 9EH6402 (herein after the "target vehicle") and being driven by unidentified female arrive at the residence. Jennifer Berger was observed exiting her residence and getting into the passenger's seat. The vehicle departed the area. Checks of the target vehicle revealed that the car was registered to Ashley Harden, of Dundalk, Maryland.

8. Members of MSP's Gang Enforcement Unit located the target vehicle and resumed surveillance of it in the vicinity of Salisbury, Maryland. Members of the surveillance team observed the females in the target vehicle meet with a male, later confirmed to be CO BULL, who was operating a red 2018 Chevrolet Colorado pickup truck bearing a Delaware license plate at a

Wawa store located at 2740 North Salisbury Boulevard, Salisbury, Maryland. The passenger of target vehicle was observed placing a plastic bag inside the passenger's side window of CO BULL's pickup truck. Both vehicles then departed the area.

9. MSP Corporal Michael Porta continued surveillance and followed BULL's vehicle. Cpl Porta observed BULL speeding and performed a traffic stop on CO BULL's vehicle on northbound Route 13 at Foskey Lane in Delmar, Maryland. Cpl. Porta and MSP Trooper Elwell made contact with CO BULL. While speaking with CO BULL, Cpl. Porta noticed BULL appeared nervous in that he would not make eye contact with the officer and, when handing over his license and registration, his hands were shaking excessively. A K-9 scan of the exterior of CO BULL's vehicle was conducted by Officer Brown of the Delmar Police Department and his K-9 partner. While scanning the vehicle the K-9 alerted positive for the presence of a controlled dangerous substance. At this time, CO BULL gave Cpl. Porta permission to move his vehicle from the roadway to a nearby business where it could be safely searched.

10. A search of CO BULL's vehicle revealed a Dollar General Store plastic bag located in the center console. A search of the bag yielded four knotted balloons containing the following: 20.6 grams of tobacco, 8.2 grams of suspected heroin, and approximately 1,398 Suboxone strips weighing 87.2 grams. All the items were individually packaged and labeled with the initials of inmates who were to receive the packages. I know, through training and experience, that the packaging of the contraband was consistent with how COs package contraband in order to smuggle it into prison facilities. I also know, through training and experience, that the quantity of the controlled substances recovered is inconsistent with personal use and is consistent with further distribution. Recovered from CO BULL's left front jacket pocket was a white MECU bank

envelope containing $5,400.00. Subsequently, CO BULL was detained and transported to the MSP Salisbury Barracks for an interview.

11. Once there, CO BULL was placed into an interview room that was equipped for audio and video recording. CO BULL was interviewed by SA Joseph Lear and me. The interview began at approximately 3:00 p.m. CO BULL was first advised of his rights; he indicated that he understood and waived those rights by signing and initialing the advice of rights form. CO BULL then agreed to cooperate and speak with investigators.

12. During the interview, CO BULL advised that he has been working for the Department of Public Safety and Correction Services for 1 year and 5 months and is assigned to ECI. He further stated that sometime around July or August 2020, he was initially approached about smuggling contraband into ECI by Inmate CURRY, who at the time was the tier representative[1] for Building C, Housing Unit 8. According to BULL, CURRY told him that he would give him $2,000 to bring Suboxone strips into the prison. A short time later, before a transaction could occur, CURRY was removed from his position as tier representative and transferred from Building C to another area in ECI for unrelated disciplinary reasons.

13. Once CURRY left Building C, Inmate BERGER approached CO BULL to smuggle contraband into ECI, and BULL agreed to do so. CO BULL first stated that September 9, 2020, was to be the first time he took contraband into ECI for BERGER. CO BULL indicated that he communicated with the people who would be delivering the contraband and the cash payment via

---

[1] A tier representative is an inmate who represents other inmates on a particular housing tier to the prison staff. The tier representative inmate has more freedom to move about the facility than other inmates.

text message and that those messages included such details as where to meet and what vehicles they would use. CO BULL advised that on September 9, 2020, he met with two white females in a Blue Chevrolet van in the Wawa parking lot. According to BULL, the two females pulled up in the van, and the driver got out of her vehicle and gave him 4 or 5 balloons that he believed contained Suboxone as well as unknown amount of cash as payment (later confirmed to be $5,400). CO BULL indicated that he planned to take the package into ECI on Friday, September 11, 2020, when he returned to work. CO BULL advised he was trying to figure out how to smuggle the package into ECI because it was too big to bring in all at once. CO BULL indicated that once the contraband had been smuggled into ECI, he would have met BERGER in a janitorial closet to provide BERGER the contraband.

14. CO BULL then admitted to smuggling contraband into ECI on one prior occasion. According to BULL, approximately two weeks prior, he smuggled Suboxone strips stuffed in blue balloons into ECI and gave them to BERGER. CO BULL advised that the package was half the size of the package interdicted on September 9, 2020, and that he was paid $2,000. CO BULL received the first package at the same Wawa from the same white female who handed him the package on September 9, 2020. BULL further stated that an unknown white male was also present at the first transaction.

15. CO BULL currently resides in Seaford, Delaware. CO BULL, during each arranged meeting, would commute from Delaware to Maryland to obtain the controlled substance or other contraband to be smuggled onto ECI as well as to obtain his cash payment.

1:20-mj-2424 TMD
AUSA Lauren Perry

## CONCLUSION

16. Based on the facts set forth above, I submit there is probable cause to believe that **MAURICE ANTONIO BULL** has committed violations of 18 U.S.C. § 1952(a)(3) and 21 U.S.C. § 841(a)(1). I, therefore, request that the Court issue a criminal complaint and an arrest warrant based on these offenses.

Michael DeBord,
Task Force Officer, FBI

Affidavit submitted by email and attested to me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1 and 41(d)(3) this 28 day of September, 2020.

Honorable Thomas M. DiGirolamo
United States District Judge